NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0101n.06
Filed: November 17, 2004

Nos. 03-2207, 03-2339

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| FAIRFIELD FORD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM A FINAL ORDER OF |
| | ) | THE NATIONAL LABOR RELATIONS |
| NATIONAL LABOR RELATIONS BOARD, | ) | BOARD |
| | ) | |
| Respondent. | ) | |

Before: MERRITT, DAUGHTREY, and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Fairfield Ford, an automotive dealership, appeals an order by the

National Labor Relations Board ("NLRB" or "Board") requiring the company to negotiate with a

recognized union of the dealership's mechanics. Because the company challenges factual and policy

determinations well within the discretion of the NLRB, we affirm.

I.

Fairfield Ford is an automobile dealership located in Fairfield, Ohio. Its mechanics earn

between $21,000 and $115,000 a year and differ in training level and expertise. The mechanics

work with (1) service advisers who directly deal with customers about mechanical issues relating

to vehicles, (2) a dispatcher who assigns work and (3) a warranty clerk who ensures that a warranty

covers all of the mechanics' work. The service advisers determine the nature of the customer's problems, communicate those problems to the mechanics and convey the mechanics' diagnoses back to the customers to obtain approval for any of the mechanics' suggestions. The dispatchers match customers' complaints to the skills and expertise of each mechanic. And the warranty clerk monitors the mechanics' work and codes the required forms to ensure that the services are billed correctly. The mechanics, service advisers, dispatcher and warranty clerk all work under one supervisor.

On September 27, 2002, District Lodge 34 of the International Association of Machinists and Aerospace Workers filed a petition with the NLRB requesting that it conduct a representation election among mechanics employed by Fairfield. Responding to the union's petition, the Board (on October 15, 2002) held an investigatory hearing regarding an assortment of issues, including whether the mechanics alone constituted an appropriate unit for collective bargaining. Two weeks later, the Regional Director determined that the mechanics were an appropriate unit for collective bargaining and directed the union to hold a representation hearing among these employees. Fairfield appealed this decision, arguing that the unit should encompass the entire service department, including the service advisers, the dispatcher and the warranty clerk. The Board denied Fairfield's appeal in February 2003.

On November 26, 2002, while Fairfield's appeal was pending, the Board conducted an election that resulted in an eight-to-one vote in favor of union representation. Fairfield filed objections to the election based on, among other issues, an alleged union threat at an October 30

union meeting to blackball any employee who voted against representation. At a hearing before a Board Hearing Officer, three witnesses testified. Two of these witnesses were Fairfield supervisors, both of whom claimed that a Fairfield mechanic, Tim Carter, had told them that a "union guy" had threatened that the union would know who voted against union representation at the election and would relate this information to other employees. JA 118. One of these supervisors made two written notes about the conversation. The third witness was Carter himself. He denied ever having these conversations with his supervisors, answering "no" to every question relating to the alleged union blackballing. JA 135. According to Fairfield, Carter acted as though he was nervous, intimidated and upset at the hearing. *See* Fairfield Br. at 9.

After the hearing and on the recommendation of the Board Hearing Officer, the NLRB's Regional Director rejected Fairfield's objections to the election and certified the union as the collective bargaining representative of Fairfield's mechanics. The Board subsequently rejected Fairfield's appeal.

II.

We review the Board's factual findings under a substantial-evidence standard. *See Harborside Healthcare, Inc. v. NLRB*, 230 F.3d 206, 208 (6th Cir. 2000). A party seeking to overturn the result of a representation election has the burden of showing that unlawful conduct interfered with the employees' exercise of free choice to such an extent that it materially affected the result of the election. *See id.* at 209. On top of this, the NLRB has broad discretion to determine

the contours of a bargaining unit. *See Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 491 (1947) ("The issue as to what unit is appropriate for bargaining is one for which no absolute rule of law is laid down by statute, and none should be by decision. It involves of necessity a large measure of informed discretion, and the decision of the Board, if not final, is rarely to be disturbed."); *see also Friendly Ice Cream Corp. v. NLRB*, 705 F.2d 570, 574 (1st Cir. 1983) ("[The] Board is not required to select the most appropriate unit in a particular factual setting; it need only select *an* appropriate unit for the range of units appropriate under the circumstances.").

This standard of review goes a long way to resolving Fairfield's two arguments on appeal—a challenge to the Board's bargaining-unit determination and a challenge to the fairness of the election. Fairfield first argues that, in finding that the mechanics constituted a group, the Board "exaggerated" certain "unsupported conclusions" and "failed to discuss *at all* significant uncontroverted evidence." Fairfield Br. at 14. These particular mechanics, Fairfield adds, are not a "homogenous" group for purposes of determining a "unit," *see Case Western Reserve Univ. v. NLRB*, 1997 U.S. App. LEXIS 27039 (6th Cir. Sept. 25, 1997) (unpublished), because their compensation ranges from $21,000 to $115,000 and because they possess different certification levels. In light of these differences, Fairfield states that "interdependence on compensation creates a substantial community of interest among all the Service Department employees," Fairfield Br. at 26 (emphasis removed), including dispatchers, service advisers and the warranty clerk in the unit determination, all of whom share a "community of interest," work together and get bonuses based on their collective output. We do not agree. The allegedly broad ranges in compensation of the

mechanics' bargaining unit would not be alleviated by including other Service Department employees in the unit; the same disparity would remain. And for like reasons adding more employees to the bargaining unit would make the unit less homogenous and more diverse in all respects (not just salary but expertise and job responsibility as well), which undermines the company's central pitch in favor of a unit with a closely connected "community of interest." The appropriate size of a bargaining unit, as the tension in Fairfield's argument demonstrates, is a difficult policy determination, one that the National Labor Relations Act commits to the NLRB in the first instance and one that the NLRB reasonably resolved in this case. *See Orson E. Coe Pontiac-GMC Truck, Inc. v. NLRB*, 2000 U.S. App. LEXIS 23576 (6th Cir. Sept. 13, 2000) (unpublished).

Fairfield also argues that substantial evidence does not support the Board's conclusion that the election was fairly conducted because it should have found credible the two Fairfield supervisors' testimony on alleged union blackballing and should not have found persuasive Carter's testimony. Because we review credibility determinations using a deferential standard, we need not engage in any balancing of witness testimony, let alone balancing of hearsay testimony from two supervisors against the direct testimony of an employee. The Board permissibly rejected this argument.

III.

For these reasons, we deny Fairfield's petition for review and grant the Board's cross-application for enforcement.